**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COLFIN 2019-2H INDUSTRIAL OWNER, LLC, a Delaware limited liability company )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE VILLAGE OF UNIVERSITY PARK )<br>)<br>Defendant. ) | Case No. 19-cv-5309<br><br>**JURY DEMAND** |

## DEFENDANT VILLAGE OF UNIVERSITY PARK'S ANSWER TO PLAINTIFF'S COMPLAINT

NOW COMES Defendant, Village of University Park (the "Village"), by and through its attorneys Matthew M. Welch and John P. Wise of Montana & Welch, LLC, and for its Answer to Plaintiff's Complaint states as follows:

### NATURE OF THE CASE

1. This is an action seeking damages and a mandamus against the Village for its wrongful failure and refusal to establish a segregated fund for COLFIN's benefit and to reimburse COLFIN for reasonable and necessary costs expended to redevelop and revitalize a blighted industrial site within an authorized Tax Increment Financing ("TIF") redevelopment area. The Village's willful misconduct violates a valid and enforceable contract with COLFIN's predecessor in interest, COLFIN's due process rights, state statute, and the Village's own ordinances.

**ANSWER:** This Defendant makes no response to the allegations in paragraph 1 relating to the Complaint, as the Complaint speaks for itself. In further answering, this Defendant denies each and every other allegation contained within paragraph 1.

### THE PARTIES

2. COLFIN is a Delaware single purpose limited liability company with its principal place of business in Dallas, Texas. COLFIN's sole asset is the Illinois property which is the subject of this action.

**ANSWER:** This Defendant has insufficient knowledge as to the allegations contained in paragraph 2, therefore neither admits nor denies the same, but demands strict proof thereof.

3. The Village is a home rule municipal corporation organized under the laws of the

State of Illinois and is situated in Cook and Will Counties, Illinois.

**ANSWER:** This Defendant admits the allegations contained in paragraph 3.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

**ANSWER:** This Defendant admits that jurisdiction is proper in this Court but denies that it is liable to Plaintiff.

5. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims asserted in this action because they are so related to the federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** This Defendant admits that jurisdiction is proper in this Court but denies that it is liable to Plaintiff..

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b)(l) and (2) because the Village is a resident of Illinois and of this judicial district and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

**ANSWER:** This Defendant admits that venue is proper in this Court but denies that it is liable to Plaintiff.

## STATEMENT OF FACTS

**I.   THE ILLINOIS INDUSTRIAL JOBS RECOVERY LAW AND TIF V.**

7. The Illinois General Assembly enacted the Illinois Industrial Jobs Recovery Law, 65 ILCS 5/11-74.6-1, et seq., (the "Industrial Jobs Recovery Law") in 1994 to develop or redevelop blighted industrial areas in the state and to prevent further deterioration of the tax bases in the communities housing those industrial areas.

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 7 regarding 65 ILCS 5/11-74.6-1, as that statute speaks for itself.

8. In passing the Industrial Jobs Recovery Law, the legislature declared that it was "necessary to encourage private investment and restore and enhance the tax base of the taxing districts in [vacant industrial] areas by the development or redevelopment of project areas." 65 ILCS 5/11-74.6-S(c).

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 8 regarding ILCS 5/11-74.6-S(c), as that statute speaks for itself

9. The Industrial Jobs Recovery Law was intended to enable Illinois municipalities to facilitate development or redevelopment of project areas, and, to that end, allows them to set aside redevelopment project areas and to provide that the increased tax revenues derived from the increase in value of the various pieces of property in these areas are to be used for their improvement.

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 9 regarding 65 ILCS 5/11-74.6-1, as that statute speaks for itself.

10. Pursuant to the Industrial Jobs Recovery Law, the Village adopted ordinances on or about July 10, 2001 (numbered 1299, 1300, and 1301) and December 20, 2005 (numbered 1536, 1537, and 1538) (collectively the "Ordinances") establishing a Redevelopment Project Area known as "TIF V."

**ANSWER:** This Defendant admits the allegations in paragraph 10 to the extent that they are consistent with the July 10, 2001 ordinances and the December 20, 2005 ordinances relating to the Redevelopment Project Area known as TIF V. To the extent that the allegations are not consistent with the July 10, 2001 ordinances and the December 20, 2005 ordinances relating to the Redevelopment Project Area known as TIF V, Defendant denies those allegations.

11. TIF V includes the tract of land containing approximately five-hundred and fifty (550) acres generally bounded by Central Avenue, Dralle Road, Cicero Avenue and University Parkway and also including additional acreage to the north of University Parkway on the east and west sides of Central Avenue all in Monee Township, University Park, Will County, Illinois (the "Redevelopment Project Area").

**ANSWER:** This Defendant denies the allegations in paragraph 11

12. The Village created TIF V to encourage the development of vacant industrial sites and the reactivation of improved, but unused, industrial sites located within that area for the general benefit of the public, industrial users, and Village residents.

**ANSWER:** This Defendant admits the allegations in paragraph 10 to the extent that they are consistent with the July 10, 2001 ordinances and the December 20, 2005 ordinances relating to the Redevelopment Project Area known as TIF V. To the extent that the allegations are not consistent with the July 10, 2001 ordinances and the December 20, 2005 ordinances relating to the Redevelopment Project Area known as TIF V, Defendant denies those allegations.

13. The Redevelopment Plan and Project for TIF V prepared in July 2001 by Kane, McKenna and Associates, Inc. identified several core Redevelopment Objectives, including allowing the Village to: assist in coordinating development and redevelopment activities within the project area; reduce the level of unemployment within the Village; accomplish redevelopment

over a reasonable time period; and provide for high quality development and an attractive overall appearance of the area.

**ANSWER:** This Defendant admits the allegations in paragraph 13 to the extent that they are consistent with the July 2001 Redevelopment Plan and Project for TIF V. To the extent that the allegations are not consistent with the July 2001 Redevelopment Plan and Project for TIF V, Defendant denies those allegations.

14. Village Ordinance No. 1538 adopting Tax Increment Financing for the Redevelopment Project Area stated:

> That portion, if any, of those taxes which is attributable to the increase in the current equalized assessed valuation of each taxable lot, block, tract or parcel of real property in the Amended Redevelopment Project Area, over and above the initial equalized assessed value or the updated initial equalized assessed value of each property in the Amended Redevelopment Project Area shall be allocated to, and when collected, shall be paid by the County Collector to the Village Treasurer who shall deposit that portion of those taxes in the existing special fund called "The Dralle-Governors Business Park Redevelopment Project Area Special Tax Allocation Fund" of the Village for the purpose of paying redevelopment project costs and obligations incurred in the payment of those costs and obligations.

(Village Ordinance No. 1538, Section 2(b).) (emphasis added)

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 14 regarding Village Ordinance No. 1538, as that ordinance speaks for itself.

## II. THE 2006 REDEVELOPMENT AGREEMENT.

15. On August 8, 2006, University Crossings, I, LLC ("TCB-University Crossings"), an Illinois limited liability company, and the Village entered into the Redevelopment Agreement Pertaining to Redevelopment Site No. 3(A) Amended Redevelopment Project Area Number V (the "Redevelopment Agreement"). A true and correct copy of the Redevelopment Agreement is attached as Exhibit A.

**ANSWER:** This Defendant admits the allegations in Paragraph 15.

16. The Village adopted and approved the Redevelopment Agreement by Village Ordinance No. 1568 on August 8, 2006. A true and correct copy of Village Ordinance No. 1568 is attached as Exhibit B.

**ANSWER:** This Defendant admits that the Village passed an Ordinance Adopting a Redevelopment Agreement Pertaining to Redevelopment Site No. 3(A) in Amended Redevelopment Project Area Number V [TCB – University Crossings I, LLC] and admits the allegations in paragraph 16 to the extent that they are consistent with said Ordinance. To the extent

4

that the allegations are not consistent with the Ordinance, Defendant denies those allegations.

17. The Redevelopment Agreement defined "Redevelopment Site No. 3(A)" as "the 23.317 acre tract located within TIF V on the south side of University Parkway, west of Cicero Avenue and having 1217.61 linear feet of frontage along University Parkway." (the "Redevelopment Site"). (Redevelopment Agreement, p. 3.) The common address of Redevelopment Site No. 3(A) is 425 Crossings Drive, University Park, Illinois.

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 17 regarding the Redevelopment Agreement, as that agreement speaks for itself

18. Consistent with the Industrial Jobs Recovery Law and the Ordinances creating TIF V, the Redevelopment Agreement was designed to incentivize TCB-University Crossings, as "Developer", to construct an industrial facility of approximately 455,000 square feet on the Redevelopment Site (the "Project").

**ANSWER:** This Defendant denies the allegations in paragraph 18 as plead.

19. Developer and the Village subsequently amended the Redevelopment Agreement to: (1) increase the maximum amount of the "Developer's Share" of the site specific Tax Increment from "6,000,000.00" to "$11,714,938.00;" (2) provide that Developer will advance the Project costs "in the form on an interest bearing loan;" and (3) include "allowable interest on Developer's advance or loan for the acquisition and construction of the Redevelopment Improvements" as part of Developer's Project costs which are to be reimbursed by the Village under the Industrial Jobs Recovery Law (the "Redevelopment Project Costs"). A true and correct copy of the Amendment to Redevelopment Agreement Pertaining to Site No. 3(A) in Amended Redevelopment Project Area Number V is attached as Exhibit C.

**ANSWER:** This Defendant admits that an amendment to the redevelopment agreement was signed by the Village, but denies each and every other allegation in paragraph 19.

20. On September 26, 2006, the Village passed Village Ordinance No. 1580 which amended Ordinance No. 1568 to reflect the agreed upon modifications to the Redevelopment Agreement. A true and correct copy of Village Ordinance No. 1580 is attached as Exhibit D.

**ANSWER:** This Defendant admits that the Village passed an Ordinance Amending Ordinance No. 1568 Adopting a Redevelopment Agreement Pertaining to Redevelopment Site No. 3(A) in Amended Redevelopment Project Area Number V [TCB – University Crossings I, LLC] and admits the allegations in paragraph 20 to the extent that they are consistent with said Ordinance. To the extent that the allegations are not consistent with the Ordinance, Defendant denies those allegations.

21. The Redevelopment Agreement required the Village to reimburse Developer as follows:

3.1 Redevelopment Project Costs Reimbursement: The Village has entered into this

5

> Agreement in furtherance of the Redevelopment Plan, and, directly in connection therewith, agrees to reimburse Developer for a portion of the reasonable and necessary costs incurred by Developer incidental to the development of Redevelopment Site No. 3(A), and to the extent that the costs to be reimbursed qualify as the "Redevelopment Project Costs" under the Jobs Recovery Law. Subject to the specific annual and total limitations and conditions hereinafter, and hereinbefore described, the Village agrees to reimburse Developer such costs as are allowed under the Jobs Recovery Law including, by way of example, costs of site preparation, job training, retraining and ancillary development costs including allowable interest on Developer's advance or loan for the acquisition and construction of the Redevelopment Improvements and Developer's cost for the training or retraining of new and existing employees (Qualified Redevelopment Costs or "Q.R.C."), in the total amount of the lesser of $11,714,938.00 or 75% of the total real estate Tax Increment revenues generated by Redevelopment Site No. 3(A) during the term of this agreement.

(Redevelopment Agreement, §3.1.); see also 65 ILCS 5/11-74.6-10(o) (defining "Redevelopment Project Costs").

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 21 regarding the Redevelopment Agreement, as that agreement speaks for itself.

      22.      The Redevelopment Agreement set forth the following process by which Developer could request reimbursement of its Redevelopment Project Costs from the Village:

> To establish a right of reimbursement for a specific Redevelopment Project Cost, Developer shall submit to a person or department within the Village (as the same is designated by the Village) a written statement in the form attached hereto as Exhibit "D" and by this reference made a part hereof ("Request for Reimbursement") setting fmth the amount of reimbursement requested and the specific Redevelopment Project Costs for which reimbursement is sought. Each Request for Reimbursement shall be accompanied by such bills, contracts, invoices, lien waivers or such other evidence as the Village shall reasonably require to verify the right of Developer to reimbursement under this Agreement. The appropriate Village employee or department shall have thirty (30) days after receipt of any Request for Reimbursement from Developer to recommend approval or disapproval of such request to the Board and, if disapproved, to provide Developer in writing and in detail with an explanation as to why such Village employee or department is not prepared to recommend such reimbursement.

(Redevelopment Agreement, §3.4.)

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 22 regarding the Redevelopment Agreement, as that agreement speaks for itself.

23. The Redevelopment Agreement required the Village to make all reimbursements "directly to the Developer" from "the Developer's sub-account of the Special Tax Allocation Fund established for the TIP V District (the "STAF"), or through an escrow established by the Village to facilitate the receipt and distribution of tax increment." (Redevelopment Agreement, §3.2.). Developer thus had an unqualified property interest in the money that the Village was required to deposit into that sub-account.

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 23 regarding the Redevelopment Agreement, as that agreement speaks for itself. This Defendant denies each and every other allegation in paragraph 23.

24. Disbursements of reimbursed cots were to be made "once annually generally not later than December 31 of the calendar year" in which such monies were deposited in the Special Tax Allocation Fund. (Redevelopment Agreement, §3.5.)

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 24 regarding the Redevelopment Agreement, as that agreement speaks for itself.

### III. THE VILLAGE FAILED TO REIMBURSE THE DEVELOPER'S REDEVELOPMENT PROJECT COSTS.

25. On November 14, 2006, the Village passed Resolution No. 2006-36 consenting to the transfer of title to Redevelopment Site No. 3(A) from Developer to Principal Financial Group, a.k.a., University Crossing, LLC ("Principal"). A true and correct copy of the Request for Board Action relating to Resolution No. 2006-36 is attached as Exhibit E. The Redevelopment Agreement and all of Developer's right, title, and interest therein were subsequently assigned to Principal, and Principal agreed to assume all of the obligations of Developer under the Redevelopment Agreement.

**ANSWER:** This Defendant admits that a Summary of Requested Action for the Meeting of November 14, 2006 is attached hereto as Exhibit E; but denies that that summary represents Resolution 2006-36. In further answering, this Defendant denies the remaining allegations in paragraph 25 as plead.

26. The Project was completed and the Village approved the Final Certificate of Occupancy in 2006.

**ANSWER:** This Defendant denies the allegations contained in paragraph 26 as plead.

27. The site is occupied by Midwest Custom Case, Inc., a casework manufacturer of furniture fixtures.

**ANSWER:** This Defendant has insufficient knowledge as to the allegations contained in paragraph 27, therefore neither admits nor denies the same, but demands strict proof thereof.

28. Principal incurred at least $15,603,447.00 in Project related costs.

**ANSWER:** This Defendant has insufficient knowledge as to the allegations contained in paragraph 28, therefore neither admits nor denies the same, but demands strict proof thereof.

29. On August 2, 2016, the Village adopted Resolution No. R2016-24 consenting to the transfer of title to Redevelopment Site No. 3(A) from Principal to DPIF IL 3 University Park, LLC ("DPIF"). A true and correct copy of Village Resolution No. R2016-24 is attached as Exhibit F.

**ANSWER:** This Defendant denies the allegations in paragraph 29.

30. On September 19, 2016, pursuant to a Real Estate Purchase and Sale Agreement, Principal assigned all of its right, title, and interest in the Redevelopment Agreement to DPIF, and DPIF assumed all of Principal's obligations under the Redevelopment Agreement. A true and correct copy of the Assignment and Assumption of Development Agreement is attached as Exhibit G.

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 30 regarding the Assignment and assumption of Development Agreement, as that agreement speaks for itself.

31. For each of tax years 2007 through 2018, Principal and DPIF delivered to the Village a Request for Redevelopment Project Cost Reimbursement ("Request for Reimbursement") in compliance with the Redevelopment Agreement, or, alternatively, the Village waived the requirement that Principal and DPIF submit a formal Request for Reimbursement under the Redevelopment Agreement. See, e.g., true and correct copies of TIF Allocation Information Returns for tax years 2007 to 2018, collectively attached as Exhibit H.

**ANSWER:** This Defendant admits the allegations in paragraph 31 to the extent that they are consistent with the 2007-2018 Requests for Reimbursement. To the extent that the allegations are not consistent with the 2007-2018 Requests for Reimbursement, Defendant denies those allegations.

32. As part of these requests, Principal and DPIF demanded the Village to pay their Redevelopment Project Costs.

**ANSWER:** This Defendant denies the allegations in paragraph 32 as plead.

33. Under the terms of the Redevelopment Agreement, the Village was obligated to approve the costs or notify Principal and DPIF in writing within 30 days if it determined that any of the amount sought to be reimbursed should be disapproved and provide a detailed explanation for the disapproval. (Redevelopment Agreement, §3.4.). Absent written notice of disapproval from the Village, it was presumed that Principal's and DPIF's requests for reimbursement were approved.

8

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 33 regarding the Redevelopment Agreement, as that agreement speaks for itself. In further answering, this Defendant denies the remaining allegations in paragraph 33.

34. Here, the Village either approved or failed to issue notice of disapproval of Principal's and DPIF's certified costs.

**ANSWER:** This Defendant denies the allegations in paragraph 34.

35. Principal and DPIF therefore reasonably relied on the fact that any requests for reimbursement of their Redevelopment Project Costs had been approved and would be paid by the Village from the appropriate TIF funds on an on-going basis.

**ANSWER:** This Defendant denies the allegations in paragraph 35.

36. To date, the Village has reimbursed Developer, Principal, or DPIF Redevelopment Project Costs in the aggregate amount of $3,220,302.00.

**ANSWER:** This Defendant denies the allegations in paragraph 36.

37. All such payments were made from the Village's "General Fund Account," not from the Special Tax Allocation Fund which the Village was required to establish for the TIF V District under the Redevelopment Agreement and its Ordinances, or from Principal 's and DPIF's segregated sub-account of that fund.

**ANSWER:** This Defendant denies the allegations in paragraph 37.

38. On information and belief, the Village did not deposit and segregate the TIF V tax increment into the Special Tax Allocation Fund for the TIF V District as it was required to do, nor did it establish a segregated sub-account of that fund exclusively for the benefit of Principal and DPIF as it was required to do.

**ANSWER:** This Defendant neither admits nor denies the allegations in paragraph 53, as they call for a legal conclusion. To the extent they do not call for a legal conclusion, Defendant denies the allegations.

39. Instead, the Village issued TIF payments from its general operation fund, and comingled tax increment owed to Principal and DPIF with other Village funds, as well as with tax increment owed to other developers for similar redevelopment projects.

**ANSWER:** This Defendant denies the allegations in paragraph 39.

40. On December 28, 2018, pursuant to a Purchase and Sale Contract (Light), DPIF agreed to assign all of its right, title, and interest in the Redevelopment Agreement to COLFIN, and COLFIN agreed to assume all of DPIF's obligations under the Redevelopment Agreement. A true and correct copy of the Assignment and Assumption of Development Agreement that DPIF

9

and COLFIN executed formalizing this assignment and assumption is attached as Exhibit

**ANSWER:** This Defendant makes no answer to the allegations contained in paragraph 40 regarding the Assignment and Assumption of Development Agreement, as that agreement speaks for itself.

41. On or about January 16, 2019, DPIF requested that the Village consent to the assignment of assumption of all of the DPIF's obligations under the Redevelopment Agreement to COLFIN.

**ANSWER:** This Defendant admits the allegations in paragraph 41.

42. On or about March 12, 2019, the Village consented to the assignment of assumption of all of the DPIF's obligations under the Redevelopment Agreement to COLFIN. A true and correct copy of this consent is attached as Exhibit J.

**ANSWER:** This Defendant admits the allegations in paragraph 42.

43. To date, the Village owes COLFIN an amount no less than $2,516,257.74.

**ANSWER:** This Defendant denies the allegations in paragraph 43.


44. The Village has failed and refused to pay COLFIN the amounts demanded to be paid. See Ex. H.

**ANSWER:** Defendant denies the allegations contained in paragraph 44 as plead.

45. On information and belief, the Village has spent or misappropriated the funds it owes to COLFIN.

**ANSWER:** This Defendant denies the allegations contained in paragraph 45.

46. The Village has been the subject of similar litigation brought by other developers for unpaid redevelopment project costs, and, according to news reports, is under federal investigation for the misappropriation of TIF funds. See the Clorox International Company v. Village of University Park, Case No. 17-cv-00062; Applied Systems, Inc. v. Village of University Park, 17-cv-06849; Evelyn Holmes, University Park Board Calls for Mayor to Resign, https://abc7chicago.com/politics/university-park-board-calls-for-mayor-to-resign/1825825/ (reporting that Village Trustees accused the Village President of "raiding TIF funds[s] by setting yup phony wire transfers, awarding village contract to family and friends without board approval and refusing to comply with an audit of village finances."); Zak Koeske, University Park getting forensic audit of misappropriated TIF funds, http://www.chicagotribune.com/suburbs/daily-southtown/news/ct-sta-university-park-financial-crisis-st-0112-20180112-story.html ("A preliminary report released this month by a board-hired forensic auditor found University Park had used at least $26 million, or approximately three times the village's annual revenues, in TIF funds

for non-TIF related purposes from 2012 to 2016…As a result of its improper TIF expenditures, the village is more than $17 million behind in its reimbursements to businesses that operate in two of its TIF districts."

**ANSWER:** Village admits that articles were published by ABC and Chicago Tribune and that cases 17cv62 and 17cv6849 were brought against it, but deny remainder of allegations of paragraph 46.

## COUNT I
## Fifth Amendment Taking

47. COLFIN repeats and re-alleges all of the allegations in Paragraphs 1 through 46 above as if set forth fully herein.

**ANSWER:** The Village incorporates its answers to the foregoing paragraphs 1-46 as if fully plead herein.

48. COLFIN has a bona fide property interest in the reimbursement of its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

**ANSWER:** Defendant denies the allegations contained in paragraph 48 as plead.

49. Acting under color of state law, the Village intentionally and wrongfully deprived COLFIN of its property by failing and refusing to pay COLFIN its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

**ANSWER:** This Defendant denies the allegations contained in paragraph 49.

50. The Village did not establish a Special Tax Allocation Fund sub-account for COLFIN's benefit as required by law and contract.

**ANSWER:** Defendant denies the allegations contained in paragraph 50 as plead.

51. On information and belief, the Village did not establish TIP fund sub-accounts for any other developers despite its obligation to do so under redevelopment agreements with those other developers.

**ANSWER:** This Defendant denies the allegations contained in paragraph 51.

52. The Village's actions as set forth above constitute an official municipal policy, custom, or practice with regard to the Village's treatment of TIF monies and developers seeking payment of reasonable and necessary redevelopment project costs which are eligible for reimbursement under the Industrial Jobs Recovery Law and related TIF laws.

**ANSWER:** This Defendant denies the allegations contained in paragraph 52.

53. At all relevant times, COLFIN had a legitimate claim and entitlement to the reimbursement of its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A) by virtue of its statutory and contractual rights to have such funds deposited into a segregated, special account solely for its benefit.

**ANSWER:** This Defendant denies the allegations contained in paragraph 53.

54. The Village, acting pursuant to official municipal policy, wrongfully took COLFIN's property.

**ANSWER:** This Defendant denies the allegations contained in paragraph 54.

55. On information and belief, some or all of the funds that the Village wrongfully took was not used for a public purpose.

**ANSWER:** This Defendant denies the allegations contained in paragraph 55.

56. COLFIN has received no just compensation in exchange for the wrongful taking of its property in violation of the Fifth Amendment of the United States Constitution and 42 U.S.C. § 1983.

**ANSWER:** This Defendant denies the allegations contained in paragraph 56.

57. COLFIN has been damaged as a direct and proximate result of the Village's unlawful actions.

**ANSWER:** This Defendant denies the allegations contained in paragraph 57.

**WHEREFORE**, the Village of University Park denies that Colfin is entitled to any relief, whatsoever, and prays that judgment be entered for the Village of University Park and against Plaintiff and it be awarded such other relief as may be appropriate.

## COUNT II
### Due Process Violation of 42 U.S.C. § 1983

58. COLFIN repeats and re-alleges all of the allegations in Paragraphs 1 through 46 above as if set forth fully herein.

**ANSWER:** The Village incorporates its answers to the foregoing paragraphs 1-46 as if fully plead herein.

59. COLFIN has a bona fide property interest in the reimbursement of its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

12

**ANSWER:** Defendant denies the allegations contained in paragraph 59 as plead.

60. Acting under color of state law, the Village intentionally and wrongfully deprived COLFIN of its property by failing and refusing to pay COLFIN its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

**ANSWER:** This Defendant denies the allegations contained in paragraph 60.

61. The Village did not establish a Special Tax Allocation Fund sub-account for COLFIN's benefit as required by law and contract.

**ANSWER:** Defendant denies the allegations contained in paragraph 61 as plead.

62. On information and belief, the Village did not establish TIF fund sub-accounts for any other developers despite its obligation to do so under redevelopment agreements with those other developers.

**ANSWER:** This Defendant denies the allegations contained in paragraph 62.

63. The Village violated COLFIN's constitutionally protected procedural due process rights by failing to afford COLFIN notice and an opportunity for a hearing relating to: (1) the Village's failure and refusal to properly deposit and segregate COLFIN's TIF monies into a Special Tax Allocation Fund as it was required to do by law; (2) the Village's failure and refusal to properly deposit and segregate TIF monies into a sub-account of the Special Tax Allocation Fund established for the TIF V District exclusively designated for COLFIN as it was required to do by law; (3) the Village's failure and refusal to pay COLFIN its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A) upon request as it was required to do by law; and (4) the Village's unlawful co-mingling, spending or misappropriation, of funds rightfully belonging to COLFIN.

**ANSWER:** This Defendant denies the allegations contained in paragraph 63.

64. The Village's actions as set forth above constitute an official municipal policy, custom, or practice with regard to the Village's treatment of TIF monies and developers seeking payment of reasonable and necessary redevelopment project costs which are eligible for reimbursement under the Industrial Jobs Recovery Law and related TIF laws.

**ANSWER:** This Defendant denies the allegations contained in paragraph 64.

65. The Village's actions violated COLFIN's right not to be deprived of its property without due process of law under the Fourteenth Amendment of the United States Constitution and constituted violations of 42 U.S.C. § 1983.

**ANSWER:** This Defendant denies the allegations contained in paragraph 65.

66. COLFIN has been damaged as a direct and proximate result of the Village's unlawful actions.

**ANSWER:** This Defendant denies the allegations contained in paragraph 66.

**WHEREFORE**, the Village of University Park denies that Colfin is entitled to any relief, whatsoever, and prays that judgment be entered for the Village of University Park and against Plaintiff and it be awarded such other relief as may be appropriate.

**COUNT III**
**Breach of Contract**

67. COLFIN repeats and re-alleges all of the allegations in Paragraphs 1 through 46 above as if set forth fully herein.

**ANSWER:** The Village incorporates its answers to the foregoing paragraphs 1-46 as if fully plead herein.

68. The Redevelopment Agreement is a valid, legal, and binding contract between COLFIN and the Village.

**ANSWER:** This Defendant neither admits nor denies the allegations in paragraph 68, as they call for a legal conclusion.

69. COLFIN has fully performed its obligations under the Redevelopment Agreement.

**ANSWER:** This Defendant denies the allegations contained in paragraph 69.

70. The Village's refusal to pay the reimbursable Redevelopment Project Costs for years 2016, 2017, and 2018 is a breach of the Village's obligations under the Redevelopment Agreement.

**ANSWER:** This Defendant denies the allegations contained in paragraph 70.

71. COLFIN has suffered damages as a direct and proximate result of the Village's breach of the Redevelopment Agreement.

**ANSWER:** This Defendant denies the allegations contained in paragraph 71.

**WHEREFORE**, the Village of University Park denies that Colfin is entitled to any relief, whatsoever, and prays that judgment be entered for the Village of University Park and against

Plaintiff and it be awarded such other relief as may be appropriate.

### COUNT IV (IN THE ALTERNATIVE TO COUNT III)
**Unjust Enrichment**

72. COLFIN repeats and re-alleges all of the allegations in Paragraphs 1 through 46 above as if set forth fully herein.

**ANSWER:** The Village incorporates its answers to the foregoing paragraphs 1-46 as if fully plead herein.

73. The Village received a substantial benefit by the construction of a new facility on Redevelopment Site No. 3(A) leading to renewed economic revitalization of a previously blighted industrial area. COLFIN has continued to confer a benefit upon the Village by paying increased tax assessments.

**ANSWER:** Defendant denies the allegations contained in paragraph 73 as plead.

74. COLFIN conferred such benefit with the reasonable expectation of compensation through the reimbursement of its reasonable and necessary Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A), as provided by the Industrial Jobs Recovery Law.

**ANSWER:** This Defendant has insufficient knowledge as to the allegations contained in paragraph 74, therefore neither admits nor denies same, but demands strict proof thereof.

75. The Village has unjustly retained such benefit to COLFIN's detriment for failure to pay COLFIN its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

**ANSWER:** This Defendant denies the allegations contained in paragraph 75.

76. The Village's retention of such a benefit violates the fundamental principles of justice, equity, and good conscience.

**ANSWER:** This Defendant denies the allegations contained in paragraph 76.

77. There is no adequate remedy at law for the detriment the Village has caused COLFIN.

**ANSWER:** This Defendant denies the allegations contained in paragraph 77.

**WHEREFORE**, the Village of University Park denies that Colfin is entitled to any relief, whatsoever, and prays that judgment be entered for the Village of University Park and against

Plaintiff and it be awarded such other relief as may be appropriate.

## COUNT V
### Mandamus

78. COLFIN repeats and re-alleges all of the allegations in Paragraphs 1 through 46 above as if set forth fully herein.

**ANSWER:** The Village incorporates its answers to the foregoing paragraphs 1-46 as if fully plead herein.

79. Under the Industrial Jobs Recovery Law, the Redevelopment Agreement and its Ordinances, the Village has the authority and a clear duty to remit to COLFIN the reimbursement of its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

**ANSWER:** This Defendant denies the allegations contained in paragraph 79.

80. COLFIN has a right to the reimbursement of its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

**ANSWER:** This Defendant denies the allegations contained in paragraph 80.

81. The Village has acted unlawfully in failing to reimburse COLFIN for its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

**ANSWER:** This Defendant denies the allegations contained in paragraph 81.

82. Under the Redevelopment Agreement and its own Ordinances, the Village has the authority and a clear duty to establish a segregated specially designated fund, the Special Tax Allocation Fund, as well as a sub-account of that fund for the benefit of COLFIN, and to deposit all tax increment attributable to Redevelopment Site No. 3(A) in that sub-account.

**ANSWER:** This Defendant admits all duties imposed upon it by law but denies any breach thereof and further denies that paragraph 82 correctly states the applicable duties.

83. COLFIN has a right to receive all funds in that sub-account.

**ANSWER:** This Defendant denies the allegations contained in paragraph 83.

84. The Village has acted unlawfully in failing to pay all funds in that sub-account to COLFIN.

**ANSWER:** This Defendant denies the allegations contained in paragraph 84.

85. The Village has disregarded and violated its duties and has refused COLFIN's requests that it fulfill those duties.

**ANSWER:** This Defendant denies the allegations contained in paragraph 85.

**WHEREFORE**, the Village of University Park denies that Colfin is entitled to any relief, whatsoever, and prays that judgment be entered for the Village of University Park and against Plaintiff and it be awarded such other relief as may be appropriate.

## COUNT VI
### Breach of Fiduciary Duty

86. COLFIN repeats and re-alleges all of the allegations in Paragraphs 1 through 46 above as if set forth fully herein.

**ANSWER:** The Village incorporates its answers to the foregoing paragraphs 1-46 as if fully plead herein.

87. The Village owed COLFIN a fiduciary duty because the Village was required to properly deposit and segregate COLFIN's TIF monies into a Special Tax Allocation Fund; properly deposit and segregate TIF monies into a sub-account of the Special Tax Allocation Fund established for the TIF V District exclusively designated for COLFIN; and (iii) pay COLFIN its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A).

**ANSWER:** This Defendant admits all duties imposed upon it by law but denies any breach thereof and further denies that paragraph 87 correctly states the applicable duties.

88. The Village breached its fiduciary duty by its (i) failing and refusing to properly deposit and segregate COLFIN's TIF monies into a Special Tax Allocation Fund as it was required to do by law; (ii) failing and refusing to properly deposit and segregate TIF monies into a sub-account of the Special Tax Allocation Fund established for the TIF V District exclusively designated for COLFIN as it was required to do by law; (iii) failing and refusing to pay COLFIN its Redevelopment Project Costs and the tax increment attributable to Redevelopment Site No. 3(A) upon request as it was required to do by law; and (iv) unlawfully co-mingling, spending or misappropriating funds rightfully belonging to COLFIN.

**ANSWER:** This Defendant denies the allegations contained in paragraph 88.

89. COLFIN has suffered damages as a direct and proximate result of the Village's breach of its fiduciary duty.

**ANSWER:** This Defendant denies the allegations contained in paragraph 89.

**WHEREFORE**, the Village of University Park denies that Colfin is entitled to any relief, whatsoever, and prays that judgment be entered for the Village of University Park and against Plaintiff and it be awarded such other relief as may be appropriate.

## AFFIRMATIVE DEFENSES

The Village of University Park hereby gives notice that it intends to rely upon any defense that may become available or appear during discovery proceedings in this case, and hereby reserves its right to amend its answer to assert such defenses.

**TRIAL BY TWELVE PERSON JURY DEMANDED.**

                                              Respectfully submitted,
                                              **The Village of University Park,**

                                              By: */s/ John P. Wise*
                                                       One of Its Attorneys

Matthew M. Welch (ARDC No. 6294057)
John P. Wise (ARDC No. 6238380)
MONTANA & WELCH, LLC
11950 S. Harlem Avenue, Suite 102
Palos Heights, IL 60463
(708) 448-7005
mwelch@montanawelch.com
jwise@montanawelch.com